**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

PHILLIP HIMEL                                          CIVIL ACTION

VERSUS                                                NO. 16-6712

DEERE & COMPANY                                       SECTION "B"(5)

<u>**ORDER AND REASONS**</u>

Before the Court are three motions. First is "Defendant's
Motion for Summary Judgment" (Rec. Doc. 24), to which Plaintiff
timely filed a response (Rec. Doc. 33). Second is Plaintiff's
"Motion to Supplement the Administrative Record" (Rec. Doc. 27),
to which Defendant timely filed a response (Rec. Doc. 35). Finally,
Plaintiff filed a cross "Motion for Summary Judgment" (Rec. Doc.
28), to which Defendant filed a response (Rec. Doc. 37).
Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment
(Rec. Doc. 24) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to supplement
the administrative record (Rec. Doc. 27) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary
judgment (Rec. Doc. 28) is **DENIED.**


I.    <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

This case arises out of Phillip Himel's ("Plaintiff") claim
for disability benefits under the Employee Retirement Income

1

Security Act of 1974 ("ERISA"). Rec. Doc. 1 at ¶¶ 1-3 (citing 29 U.S.C. §§ 1001-1461). In November of 2012, Plaintiff suffered an accident at home that resulted in lower back and left lower extremity pain. Rec. Doc. 28-1 at 2 (citing Rec. Doc. 24-7 at 10). He ultimately underwent a left-sided microdiscectomy on December 27, 2012. *Id.* (citing Rec. Docs. 24-7 at 18-20, 25-26; 24-6 at 47). Plaintiff claims that, at the time, he was employed by Deere & Company ("Defendant"). Rec. Doc. 1 at ¶ 3.

Even though Plaintiff returned to work on March 26, 2013, (Rec. Doc. 28-1 at 3 (citing Rec. Doc. 24-10 at 37)), an MRI was taken in September of 2013 after continuing complaints of pain (*id.* (citing Rec. Doc. 24-11 at 5)). On September 23, 2013, Plaintiff was admitted to Terrebone General Medical Center ("TGMC") for treatment of lumbar discitis and an infection resulting from his surgery. *Id.* (citing Rec. Doc. 24-10 at 30). He remained in the hospital for four days. *Id.* At a November 13, 2013 visit, Plaintiff's doctor recommended physical therapy and stated that Plaintiff could not work. Rec. Doc. 24-10 at 27. After continued treatment, Plaintiff's doctor noted on April 16, 2014 that Plaintiff "remain[ed] temporar[il]y totally disabled." Rec. Doc. 24-11 at 26.

By September of 2014, Plaintiff was still suffering; his doctor again prescribed physical therapy and noted that Plaintiff

"remain[ed] completely disabled." Rec. Doc. 27-3 at 68.[1] However, on November 10, 2014, Plaintiff's doctor noted that Plaintiff was "clearly much improved . . . but he still remains symptomatic with back pain and left leg pain. I do feel he is basically temporarily totally disabled at present. I do feel that[,] possibl[y] in 6 months' time, he may be a candidate for some sedentary duty but I am unsure of this depending on his issues with his left leg." *Id.* at 70. On December 4, 2014, after a nerve conduction study, Plaintiff's doctor concluded that "I do not believe he can engage in any gainful employment given his clinical course and these findings." Rec. Doc. 24-14 at 36. Further, the Social Security Administration ("SSA") determined that Plaintiff became disabled on August 21, 2013. Rec. Doc. 24-6 at 15.

Plaintiff maintains that he participated in Defendant's ERISA plan. Rec. Doc. 1 at ¶ 3. According to Plaintiff, the plan is self-funded by Defendant and Defendant is the plan administrator. *Id.* at ¶¶ 5-6. Plaintiff received short-term disability benefits from Defendant from September 15, 2013 until those benefits were exhausted a year later on September 15, 2014. Rec. Doc. 24-1 at 4 (citing Rec. Doc. 24-4 at 2). Due to limitations placed on Plaintiff by his physicians, he claims that he is "totally disabled" under the terms of the plan. Rec. Doc. 1 at ¶¶ 8, 10.

---

[1] Note, the records contained in Rec. Doc. 27-3 were not part of the administrative record, but are the subject of Plaintiff's pending motion to supplement the administrative record. *See* Rec. Doc. 27.

3

Accordingly, Plaintiff filed a claim for long-term disability benefits. *Id.* (citing Rec. Doc. 24-4 at 128-30). However, after Defendant's Medical Director reviewed Plaintiff's file and determined that Plaintiff was unable to show that he could not perform the duties of any job for which he may qualify, Defendant denied Plaintiff's claim. *Id.* (citing Rec. Doc. 24-4 at 1); *see also* Rec. Doc. 1 at ¶ 10. Defendant informed Plaintiff of the denial on September 22, 2014. Rec. Doc. 24-1 at 5 (citing Rec. Doc. 24-4 at 2-3).

On January 16, 2015, Plaintiff requested an administrative appeal through his retained counsel. *Id.* (citing Rec. Doc. 24-4 at 4-5). The appeal was submitted to Managing Care Managing Claims ("MCMC"), "an external appeal board hired to review and provide an independent determination and recommendation for approval or denial." *Id.* (citing Rec. Doc. 24-4 at 6-9, 131-33). Dr. Charles W. Brock ("Dr. Brock"), a psychiatry and neurology/pain medicine physician, and Dr. Vicki Kalen ("Dr. Kalen"), an orthopedic surgeon, both recommended that Plaintiff's claim be denied "because his condition did not meet the Plan definition of 'totally disabled.'" *Id.* at 5-6 (citing Rec. Doc. 24-4 at 10-19). Specifically, Dr. Brock found that, even though Plaintiff could not "carry out his vocation with or without reasonable accommodations," he could "carry out a full time occupation in a sedentary vocation." Rec. Doc. 24-4 at 11. Similarly, Dr. Kalen

4

concluded that Plaintiff "would not be able to perform his job, but he would be able to perform any job with appropriate and necessary accommodations." *Id.* at 14. Pursuant to these assessments, Defendant denied Plaintiff's appeal on June 23, 2015. Rec. Doc. 24-1 at 6 (citing Rec. Doc. 24-4 at 127).

Plaintiff filed the instant suit on May 20, 2016. Rec. Doc. 1 at ¶ 13. According to the complaint, Defendant abused its discretion by denying Plaintiff's claim in bad faith, "failing to consider the disabling, synergistic effect of all of Plaintiff's medical conditions," and "failing to consider his medical condition in relation to the duties of all occupations"; further, Plaintiff claims that Defendant administered the plan, despite a conflict of interest ("as [Defendant] is liable to pay benefits from its own assets to Plaintiff, and each payment depletes [Defendant's] assets"); failed to uniformly interpret the plan; and failed to give the "full and fair review" required by ERISA. *Id.* at ¶¶ 14-21.

## II.  THE PARTIES' CONTENTIONS

### A. CROSS MOTIONS FOR SUMMARY JUDGMENT

In its motion for summary judgment, Defendant maintains that Plaintiff cannot show that Defendant "abused its discretion in denying Plaintiff's claim for benefits." Rec. Doc. 24 at 1.

Plaintiff's response simply directs this Court to his own motion for summary judgment. Rec. Doc. 33 at 1. In his motion, Plaintiff argues that Defendant abused its discretion in denying Plaintiff's claim because (1) there was a conflict of interest; (2) Defendant failed to consider Plaintiff's Social Security disability award; (3) Defendant failed to explain why it rejected the opinions of Plaintiff's treating physicians; (4) Defendant lacks vocational evidence supporting its decision; (5) Defendant failed to comply with ERISA's procedural requirements; and (6) Plaintiff meets the definition of "totally disabled" under the plan. Rec. Doc. 28-1 at 8-20.

Defendant's memorandum in response addresses each of these allegations in turn. Rec. Doc. 37. Defendant's arguments will be discussed more fully below.

### B. MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Plaintiff asserts that he supplied Defendant with supplemental medical evidence that was not included by Defendant in the administrative record. Rec. Doc. 27 at 1. Specifically, he argues that supplemental records were sent to Defendant on April 1, 2015 and received by Defendant on April 6, 2015. Rec. Doc. 27-1 at 2 (citing Rec. Doc. 27-3 at 1, 3). Further, he claims that Defendant "acknowledged receipt of all documents" on April 8, 2016. *Id.* In an April 20, 2015 letter, Plaintiff's counsel again notified

Defendant of the supplemental records. *Id.* (citing Rec. Doc. 24-6 at 27). Essentially, Plaintiff maintains that the records should be included in the administrative record because they "were submitted to [D]efendant while the appeal was being processed by [D]efendant and prior to the closing of the administrative claim file" and that, by the time the record was submitted for independent review on May 15, 2016, Defendant had possessed the records for more than a month. *Id.* Further, Plaintiff notes that Defendant never objected to the supplemental production. *Id.*

Defendant acknowledged in its motion for summary judgment that Plaintiff supplemented his request for an appeal by a letter dated March 23, 2015. *Id.* (citing Rec. Doc. 24-4 at 20). On April 8, 2016, Defendant acknowledged receipt of the March 23 communication, but not the April 1 communication now at issue. *See* Rec. Doc. 24-14 at 155-57. In its acknowledgment, Defendant informed Plaintiff that the March 23 letter and accompanying CD would be considered in Plaintiff's appeal. *Id.* at 155.

### III. LAW AND ANALYSIS

#### A. CROSS MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)); *see also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

"[A] denial of benefits challenged under [29 U.S.C. § 1132(a)(1)(B)] is to be reviewed under a *de novo* standard <u>unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan</u>," in which case an abuse of discretion standard is applied. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added); *see also Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 925 (5th Cir. 2008). "Under this standard, when 'the plan fiduciary's decision is supported by <u>substantial evidence</u> and is not arbitrary and capricious, it must prevail.'" *Sanders*, 553 F.3d at 925 (emphasis added) (quoting *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007)). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This Court may take "account of several different, often case-specific, factors, reaching a result by weighing all together." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). "[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the

degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.*

Here, the plan specifically provides that "the Plan Administrator shall have discretionary authority to determine eligibility for benefits, to construe the terms of the Plan and the Component Benefits Programs, to resolve questions of fact, and to decide any and all matters arising under the Plan and the Component Benefits Programs . . . ." Rec. Doc. 24-15 at 12. Thus, this Court will review Defendant's denial of benefits under the abuse of discretion standard.

### 1. CONFLICT OF INTEREST

If the plan administrator has a conflict of interest, the court will consider the conflict as one factor in determining whether or not the administrator abused its discretion. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009) (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008) (quoting *Glenn*, 554 U.S. at 116); *White v. St. Luke's Episcopal Health Sys.*, 317 F. App'x 390, 392 (5th Cir. 2009) ("a 'conflict of interest' . . . should be 'weighed as a factor' in determining whether an abuse of discretion occurred")). The Supreme Court clarified that the existence of a conflict does not change the standard of review from deferential to *de novo*, but must merely be

taken into account as one factor among many. *Id.* at 248 (citing *Glenn*, 554 U.S. at 116-17).

Plaintiff argues that Defendant operated under a "structural" conflict of interest by serving as the plan administrator for a plan that is funded by Defendant's general assets. Rec. Doc. 28-1 at 9 (citing Rec. Doc. 24-15 at 8, 12, 14). He also argues that there was an "actual" conflict of interest, because the person who denied Plaintiff's claim, MaryLinda Coward, is Defendant's North American Welfare Benefits Manager. *Id.* at 10 (citing Rec. Docs. 24-6 at 2-3; 24-14 at 151).

Defendant argues that there is no allegation of a history of biased claims administration, Plaintiff has not adequately proven procedural unreasonableness (*see infra*), and the administrative record was submitted to both Defendant's Medical Director and two "independent medical professionals who have affirmed that they have no conflict of interest and that their compensation is not dependent, in any way, on the outcome of this case." Rec. Doc. 37 at 4 (citing Rec. Doc. 24-14 at 24, 29).[2]

The Fifth Circuit in *Holland* explained that a structural conflict exists where "the employer who funds the plan also

---

[2] Defendant also notes that Plaintiff's treating physician indicated on September 16, 2014, that Plaintiff was capable of sedentary or light activity. Rec. Doc. 37 at 4 (citing Rec. Doc. 24-14 at 159). However, in the same report, the treating physician clearly indicated that "MY PATIENT IS LIKELY 'NEVER' TO BE ABLE TO RETURN TO WORK (IMPLIES TOTAL AND PERMANENT DISABILITY)." Rec. Doc. 24-14 at 159. Thus, the treating physician's comment, when considered in context, is not as compelling as Defendant would like the Court to think that it is.

determines eligibility for benefits . . . ." 576 F.3d at 248 (citing *Glenn*, 554 U.S. at 111-12). However, the significance of the conflict will depend on the facts of the case:

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* at 248-49 (emphasis added) (quoting *Glenn*, 554 U.S. at 116-17). Thus, "[i]f claimants do not present evidence of a particular degree of the conflict, the court will generally find that any conflict is 'not a significant factor.'" *Robinson v. Hartford Life & Acc. Ins. Co.*, No. 08-1697, 2010 WL 3023371, at *5 (W.D. La. July 29, 2010) (citing *Holland*, 576 F.3d at 249 (finding that, where there was no evidence that a conflict affected the administrator's decision or that there was a history of abuses, the conflict did not significantly impact the abuse of discretion analysis)). Similarly, in *Robinson*, the district court found that any alleged conflict was not significant enough to justify a change in the standard of review, because the plaintiff did not point to any evidence of a history of abuses or of how the conflict might

12

have affected the administrator's decision in that particular case. *Id.*

Here, Plaintiff merely alleges that a structural conflict and an actual conflict exist. He does not allege a history of abuses by Defendant or provide this Court with evidence of how these conflicts might have affected Defendant's decision in this case. At most, it appears that Plaintiff attempts to link the conflict to Defendant's decision to "arbitrarily refuse to credit [Plaintiff's] reliable evidence, including the opinions of a treating physician." This allegation is discussed in greater detail below, but, to the extent that it is relevant here, Plaintiff does not provide any direct evidence that Defendant ignored medical evidence or that it did so because of some conflict of interest. To the contrary, the fact that Defendant's independent reviewers also recommended that Plaintiff's claims be denied is persuasive evidence that Defendant took steps to reduce potential bias. In any event, conclusory allegations are insufficient summary judgment evidence and the existence of a conflict, alone, does not indicate that Defendant abused its discretion in denying Plaintiff's claims.

### 2. THE SOCIAL SECURITY DISABILITY AWARD

Plaintiff also argues that Defendant's failure to consider the Social Security disability award was an abuse of discretion.

13

Rec. Doc. 28-1 at 10. First, there is no direct evidence that Defendant did not consider the award. Instead, Plaintiff merely notes that the award was not discussed in Defendant's denial notices. *Id.* (citing Rec. Docs. 24-6 at 2-3; 24-14 at 151).

In *Schexnayder v. Hartford Life and Accident Insurance Company*, the Fifth Circuit noted that "[f]ailure to address a contrary SSA award can suggest 'procedural unreasonableness' in a plan administrator's decision." 600 F.3d 465, 471 (5th Cir. 2010) (citing *Glenn*, 554 U.S. at 118-19). This unreasonableness could justify the court giving more weight to an existing conflict. *Id.* (citing *Glenn*, 554 U.S. at 118-19). In other words, "'an ERISA plan administrator's failure to address the [SSA's] finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious.'" *Id.* (quoting *Glenn v. MetLife (Glenn I)*, 461 F.3d 660, 669 (6th Cir. 2006), *aff'd* 554 U.S. 2343).

Defendant notes that (1) SSA findings are not binding on plan administrators; and (2) the criteria for SSA disability differs from that of ERISA plans. Rec. Doc. 37 at 5 (citing *Dix v. La. Health Servs. & Indem. Co.*, No. 12-319, 2014 WL 4843670, at *13 (M.D. La. Sept. 25, 2014), *aff'd sub nom.*, 613 F. App'x 293 (5th Cir. 2015) ("While SSA disability findings are 'relevant and instructive in a Court's determination of whether a plan administrator acted arbitrarily and capriciously,' it is well

14

established that 'Social Security Determinations are not binding upon a plan administrator") (internal citations omitted); *Williams v. Hartford Life Ins. Co.*, 243 F. App'x 795, 797 n.1 (5th Cir. 2007) ("Hartford is not required to defer to a Social Security ruling") (internal citations omitted); *Hamilton v. Standard Ins. Co.*, 404 F. App'x 895, 898 (5th Cir. 2010) ("because the eligibility criteria for SSA disability benefits differs from that of ERISA plans, while an ERISA plan administrator should consider a SSA determination, it is not bound by it") (internal citations omitted); *Nugent v. Aetna Life Ins. Co.*, No. 12-65, 2013 WL 3777039, at *5 (E.D. La. July 17, 2013), *aff'd*, 540 F. App'x 473 (5th Cir. 2014) (where this Court previously noted that a plan administrator's decision to treat the SSA's definition of disability as different from the plan's definition was "not arbitrary, because a rational administrator could find that the definitions had different meaning, not only because of their textual dissimilarity . . . but also because the Fifth Circuit has held that they are different") (internal citations omitted).

In *Schexnayder*, the SSA determined that the plaintiff was fully disabled, but the plan administrator failed to address the SSA award in any of its denial letters. *Id.* The Fifth Circuit determined that "[b]ecause [the plan administrator] failed to acknowledge an agency determination that was in direct conflict with its own determination, its decision was procedurally

unreasonable." *Id.* Further, because the plan administrator "benefitted financially from the government's determination," the resulting procedural unreasonableness suggested that a financial bias may have affected the plan administrator's decision. *Id.* Ultimately, "[a]lthough substantial evidence supported [the plan administrator's] decision, the method by which it made the decision was unreasonable, and the conflict, because it is more important under the circumstances, acts as a tiebreaker for us to conclude that [the plan administrator] abused its discretion." *Id.*

In *Robinson*, the district court acknowledged the Fifth Circuit's statements in *Schexnayder* and the similarities between the two cases, namely that the SSA determined that Robinson was totally disabled and that the plan administrator did not address the SSA determination in any of its denial letters. 2010 WL 3023371, at *5 n.4. Thus, the plan administrator's "decision *could* be construed as procedurally unreasonable." *Id.* (emphasis in original). However, it was the fact that the plan administrator in *Schexnayer* failed to give "*any* acknowledgment" of the SSA determination that suggested the plan administrator failed to consider all relevant evidence and led the Fifth Circuit to conclude that the plan administrator's decision was procedurally unreasonable. *Id.* (citing *Schexnayder*, 600 F.3d at 471 n.3). Further, it was the procedural unreasonableness in *Glenn* that prompted the Supreme Court to give greater weight to an existing

16

conflict. *Id.* (citing *Schexnayder*, 600 F.3d at 471 n.3 (citing *Glenn*, 554 U.S. at 118-19)). *Robinson* was distinguishable, however, because the only evidence of the SSA award in the record was a "one-page award notice and summary and a notice of award letter . . . ." *Id.* Thus, there was nothing "detailing the basis and reasoning for the SSA's determination of disability" and "no way" for the plan administrator "to even begin to compare the SSA's determination of disability with the information [the plan administrator] had before it." *Id.* Plus, the plaintiff did not show that the definition of "disability" used by the SSA was the same, or similar to, the definition used in the plan at issue. *Id.*

Here, even though the denial letters did not explicitly refer to the SSA determination, Defendant did tell Plaintiff in its April 8, 2015 correspondence, and in its second denial letter, that all information in the record would be, and was, considered in Plaintiff's appeal. *See* Rec. Docs. 24-4 at 127, 24-14 at 155. Granted, though, there was no explicit acknowledgment of the SSA determination. However, as far as the Court is aware, the only evidence of the SSA award in the administrative record is a six-page notice of award letter. *See* Rec. Doc. 24-6 at 15. There is no evidence of the basis for the SSA's determination; so, like *Robinson*, there was no way for Defendant to compare the SSA's determination with the information in the record. Further, Plaintiff does not allege that the SSA's definition of "totally

17

disabled" is the same as the plan's definition. Based on these facts, and Fifth Circuit precedent recognizing that a plan administrator is not bound by the SSA's determination, we do not find the fact that Defendant failed to acknowledge the SSA award explicitly in its denial letters an abuse of discretion.

### 3. THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS

Plaintiff argues that Defendant did not explain its rationale for disagreeing with Plaintiff's treating physicians. Rec. Doc. 28-1 at 12. Specifically, he maintains that "[w]hile [D]efendant's reviewers note [Plaintiff's] complaints and the objective evidence supporting those complaints, the reviewer's failure to adopt the treating physician's limitations without explanation represents an arbitrary discounting of the evidence." *Id.* at 14. Plaintiff essentially argues that Defendant "arbitrarily refuse[d] to credit [Plaintiff's] reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Plaintiff also notes that Defendant's reviewers relied "solely on a paper review," such that their opinions should be given less weight than the opinions of Plaintiff's treating physicians, which were based on physical examinations. *Id.* at 15.

Defendant argues that the cases relied upon by Plaintiff are distinguishable because, in each of those cases, "the

18

administrators disregarded Plaintiff's medical records and complaints of pain." Rec. Doc. 37 at 5. In contrast, Defendant maintains that it considered Plaintiff's limitations, medical records, and complaints of pain. *Id.* at 5-6. Further, Defendant notes that a plan administrator's independent medical reviewers do not need to perform a physical examination, but may instead rely upon "paper reviews." *Id.* at 6 (citing *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 231 n.12 (5th Cir. 2004) (in which the plan doctor simply reviewed the claimant's records, without examining the claimant in person).

Significantly, in addition to the passage quoted by Plaintiff, the Supreme Court in *Black & Decker* also noted that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." 538 U.S. at 834 (emphasis added).

Nonetheless, Plaintiff cites several other cases, sometimes for their law and sometimes for their facts, in support of his position. For example, in *Kalish v. Liberty Mutual/Liberty Life Assurance Company of Boston*, the Sixth Circuit noted that "when a plan administrator's explanation is based on the work of a doctor in its employ, we must view the explanation with some skepticism."

19

419 F.3d 501, 507 (6th Cir. 2005) (citing *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381-82 (6th Cir. 2005)). Similarly, "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers['] money and preserve their own consulting arrangements." *Id.* (quoting *Black & Decker*, 538 U.S. at 832). Further, "a plan administrator, in choosing the independent experts who are paid to assess a claim, is operating under a conflict of interest that provides it with a 'clear incentive to contract with individuals who were inclined to find in its favor that [a claimant] was not entitled to continued [disability] benefits.'" *Id.* at 507-08 (citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005)). Thus, any such incentive may be considered as a factor in determining if the plan administrator abused its discretion. *Id.* at 508 (citing *Black & Decker*, 538 U.S. at 832).

However, in *Kalish*, the Sixth Circuit ultimately found that the plaintiff only offered conclusory allegations of the plan administrator's doctor's bias, without any "statistical evidence to suggest that, when retained by [the plan administrator], [the doctor] consistently opined that claimants are not disabled." *Id.* (internal citations omitted). Accordingly, the Sixth Circuit could not conclude that the plan administrator acted arbitrarily and capriciously in crediting its doctors and independent reviewers

20

over that of the plaintiff's treating physicians. *Id.* (internal citations omitted).

Similarly, here, there is no evidence that the independent reviewers used by Defendant have a tendency to find that claimants are not disabled. They even explicitly state that their compensation does not depend upon the outcome of the case. *See* Rec. Doc. 24-14 at 24, 29. Put simply, there is no evidence that either Dr. Brock or Dr. Kalen acted in a biased way.

In *Schully v. Continental Casualty Company*, a claimant had to submit sufficient "Proof of Disability," including, but not limited to, "objective medical findings," in order to qualify for benefits. 634 F. Supp. 2d 663, 681 (E.D. La. 2009), *aff'd,* 380 F. App'x 437 (5th Cir. 2010). The plan administrator found that the plaintiff's subjective complaints of back and neck pain were not supported by "objective medical evidence" and accordingly denied the claim. *Id.* However, the court found that the plaintiff submitted "a considerable amount" of objective medical evidence, including MRIS, cervical myelograms, and functional capacity examinations. *Id.* at 682. Even though the plan's independent reviewers all determined that the plaintiff's subjective complaints were not supported by objective medical evidence, none of these physicians examined the plaintiff in-person and only one actually spoke to the plaintiff's treating physician. *Id.* at 683. The court recognized that, even though treating physicians are not

given preference under ERISA, "an administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians." *Id.* (quoting *Schexnayder*, 553 F. Supp. 2d 658, 666 (M.D. La. April 2, 2008), *aff'd in part, reversed in part*, 600 F.3d 465 (quoting *Black & Decker*, 538 U.S. at 834)). The court also found the "independent reviewers[']" determinations suspicious because they readily credited arbitrary evidence. *Id.* at 684.

> On the one hand, the Hartford refused to acknowledge that evidence such as Plaintiff's cervical myelogram, numerous MRI reports, multiple failed surgeries, CAT scan, and Functional Capacity Evaluation constituted sufficiently credible "objective medical evidence" of a disability; on the other hand, however, the Hartford readily noted as persuasive such inconclusive and arbitrary evidence as the fact that Plaintiff's profile page appeared on his firm's website.

*Id.* This inconsistent methodology, along with the plan's dual role as administrator and payor, supported a finding of bias and warranted the use of a less deferential standard. *Id.* at 685. Ultimately, the court determined that the plan administrator abused its discretion in denying benefits. *Id.* at 687.

Unlike *Schully*, there is no evidence that the independent reviewers in this case arbitrarily discounted any evidence in the record. Plaintiff does not argue that Defendant concluded that there was no objective evidence, despite the obvious existence of such evidence; nor does Plaintiff argue that Defendant's reviewers relied on questionable evidence, like an internet profile.

22

Instead, Plaintiff merely argues that Defendant's reviewers did not explicitly detail the basis for their disagreement with Plaintiff's treating physicians. Plaintiff even admits that the reviewers took note of Plaintiff's complaints and the objective evidence of those complaints. It is also clear that the reviewers considered the opinions of Plaintiff's treating physicians. *See* Rec. Doc. 24-14 at 22-23, 29. They simply disagreed with those opinions. We have found, and Plaintiff has cited, no case law requiring the plan's reviewers to explain exactly why they disagreed with the opinions of a claimant's treating physicians.

In *Adams v. Metropolitan Life Insurance Company*, the Middle District of Louisiana recognized that a plan administrator could disagree with a claimant's treating physicians, but it could not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." 549 F. Supp. 2d 775, 792 (M.D. La. 2007) (quoting *Black & Decker*, 538 U.S. at 834). Further, the court noted that subjective evidence and complaints of pain cannot be ignored. *Id.* at 792-93 (citing *Audino v. Raytheon Co. Short Term Disability Plan*, 129 F. App'x 882, 885 (5th Cir. 2005)). In *Adams*, the plan administrator ignored the claimant's complaints of severe headaches and documentation from the claimant's treating physicians showing that the claimant suffered from disabling headaches, to conclude that objective evidence of a disability was not present and therefore that the claim should

be denied. *Id.* at 792. The district court recognized that the plan did not limit the record to objective evidence and accordingly concluded that the plan administrator should not have ignored the claimant's complaints and the treating physicians' assessments. *Id.* at 794. Even though the plan administrator could legally discredit the complaints and assessments, it failed to do so. *Id.* "Unable to prove that the plaintiff is not suffering from disabling pain, MetLife appears to have resorted to another tactic, discounting the plaintiff's accounts of pain altogether." *Id.* The plan administrator relied on reports by its doctors that found the claimant fully functional, despite substantial evidence to the contrary. *Id.* Reviewing the record "with slightly less deference because [the defendant] ha[d] a conflict of interest," the district court made the following findings:

> In light of the fact that MetLife did not consider or evaluate the SSA determination of disability; conducted only a file review; found no medical documentation for the plaintiff's condition despite extensive medical documentation; and discounted the plaintiff's subjective complaints and her doctor's assessment of them based on the fact that headaches are subjective, this Court finds that MetLife acted arbitrarily and capriciously in denying the plaintiff's claims for Phase II benefits.

*Id.*

Like *Schully*, the court in *Adams* found that it was an abuse of discretion when the plan administrator and its reviewers arbitrarily concluded that there was no objective evidence of a disability. Here, Defendant does not dispute the existence of such

24

evidence. Instead, Defendant's reviewers simply interpreted that evidence in a way that Plaintiff's treating physicians did not. Defendant's reviewers did not arbitrarily conclude that Plaintiff is fully functional. Rather, the reviewers recognized significant limitations. They simply concluded that Plaintiff is not "totally disabled," as defined by the plan. There is not substantial evidence to suggest that this conclusion was unreasonable. Thus, it was not an abuse of discretion for Defendant to rely upon the opinions of its medical reviewers over the opinions of Plaintiff's treating physicians.

### 4. VOCATIONAL EVIDENCE

Plaintiff argues that Defendant's denial letter fails to specify any job that Plaintiff is qualified to perform in light of the limitations noted by Defendant's own reviewers. Rec. Doc. 28-1 at 16. Defendant responds that a plan administrator does not need to mention an available occupation in its denial letter in order to survive the abuse of discretion standard. Rec. Doc. 37 at 6 (citing *Dabon v. Aetna Life Ins. Co.*, 61 F. App'x 120, at *1 (5th Cir. 2003) (where the plaintiff suggested that the defendant abused its discretion by "discussing the need for vocational evidence and then failing to obtain it," the Fifth Circuit determined that the defendant never concluded that vocational evidence was necessary, the defendant had a rehabilitation

consultant review the file, and, even if they had concluded more vocational evidence was necessary, "an administrator has no obligation to reasonably investigate a claim"; instead, the court must "focus on whether the record adequately supports the administrator's decision") (internal citations omitted).

We have found no case law requiring the plan administrator to provide the claimant with a list of jobs for which it believes the claimant is qualified and capable. Here, Defendant's reviewers determined that Plaintiff was capable of sedentary work and they did not need to investigate these opportunities further.

Plaintiff also points to his treating physicians' opinions that he would miss up to four days per month from work and be "off-task" at least 20% of the time. Rec. Doc. 28-1 at 17 (citing Rec. Doc. 24-14 at 81, Dr. Don Gervais' opinion, 87, Dr. Chris Cenac's opinion). He then cites to an absenteeism presentation given on November 6, 2010 in New Orleans and included in the administrative record. *Id.* (citing Rec. Doc. 24-14 at 113-27). Plaintiff suggests that the presentation supports a finding that missing up to four days of work per month "is unacceptable in competitive employment." *Id.* The presenter was attempting to understand why some vocational experts state that missing three to four days of work per month is acceptable. Rec. Doc. 24-14 at 113. He theorized that many of these experts probably incorrectly assume that workers are given certain holidays and paid personal, sick, and vacation leave. *Id.* at 117.

26

Based on various studies, he concluded that a typical worker misses less than one day per month. *Id.* at 123. He then asked, "[i]f something is 3 or 4 times worse than typical can it ever be acceptable?" *Id.* Ultimately, based on survey averages, he determined that "6 to 8 days per year is seen as a level of absence that is perhaps tolerable to most employers." *Id.* at 125.

Based on this presentation and the conclusions of Plaintiff's treating physicians, it appears that Plaintiff wants this Court to conclude that Plaintiff could not maintain employment in a competitive market. However, it is not the Court's role, at the summary judgment stage, to credit the opinions of Plaintiff's treating physicians over the opinions of Defendant's independent reviewers. After excluding those conflicting opinions, it would be impossible for this Court to determine whether or not Plaintiff could maintain full-time employment. Instead, it is our role to determine if Defendant abused its discretion in determining that Plaintiff could maintain such employment.

Plaintiff cites one Fifth Circuit case to support his contention that Defendant's failure to discuss how Plaintiff could perform any occupation with his noted limitations is a "glaring omission that demonstrates [D]efendant was more interested in denying this claim than paying benefits to a deserving claimant." Rec. Doc. 28-1 at 17 (citing *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 396 (5th Cir. 2006)). In *Robinson*, however, the

27

administrator based its denial on a finding that the plaintiff's job did not require driving, but the Fifth Circuit determined that the record did <u>not</u> contain any "evidence that driving was <u>not</u> an essential task required of employees in positions comparable to [the plaintiff's] job . . . ." 443 F.3d at 395 (emphasis added). Because a person under the applicable plan was "totally disabled" when they could not perform the "material duties" of their "own occupation," and the administrator's denial was based on an unsupported finding that the plaintiff's occupation did not require driving, the Fifth Circuit vacated and remanded with instructions that judgment be entered in favor of the plaintiff. *Id.* at 391, 397. There simply is no comparable discrepancy in the instant case, especially when we take into account that Defendant reasonably credited the opinions of its medical reviewers over the opinions of Plaintiff's treating physicians.

Finally, Defendant urged this Court to remember that there are often "conflicting medical opinions, with the plaintiffs' treating physicians generally supportive of a finding of disability and the defendants' internal reviews or independent examining physicians determining otherwise," that "it is the role of the ERISA administrator, not the reviewing court, to weigh valid medical opinions," and that an administrator's denial is generally only overturned when "there is a 'complete absence in the record of any 'concrete evidence'' supporting a denial." *Killen v.*

*Reliance Standard Life Ins. Co.*, 776 F.3d 303, 309 (5th Cir. 2015) (internal citations omitted).

Turning to the opinions in this case, Defendant's first reviewer, Dr. Brock, determined that Plaintiff "would be able to do occasional walking and standing, up to ten minutes at a time and one hour each per day . . . ." Rec. Doc. 24-14 at 21-22. Further, he could sit, with the ability to reposition as needed; occasionally lift, push, pull, and carry up to ten pounds; reach at waist/desk level without restriction; and reach below waist level and above shoulder level occasionally. *Id.* at 22. Dr. Kalen made similar findings, noting that Plaintiff could sit for an hour at a time, with the ability to move around for two to three minutes each hour; walk and stand up to thirty minutes at a time, for up to two hours per day; reach without restriction; and lift no more than ten pounds; but he could not bend, squat, kneel, crawl, or climb stairs regularly. *Id.* at 26.

Both Dr. Brock and Dr. Kalen noted the limitations imposed by Plaintiff's treating physicians. *See* Rec. Doc. 24-14 at 22 (where Dr. Brock notes that Plaintiff's physicians found that Plaintiff could not maintain any competitive employment and cold not perform any occupation because he could not be expected to attend work on a consistent basis "as he will miss four days per month and be off task for 25% or more at a time"); 29 (where Dr. Kalen recognized the treating physician's opinion that Plaintiff "would be 'off

task' due to his medications for 25% of the time" and "would have no 'good days,' only bad"). It appears that, after reviewing the record, they simply disagreed with those assessments. Again, it was not an abuse of discretion for Defendant to rely upon the findings of its independent reviewers over the findings of Plaintiff's treating physicians.

### 5. ERISA'S PROCEDURAL REQUIREMENTS

ERISA outlines certain procedural and notice requirements that must be satisfied when a plan administrator denies a claim for benefits. *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (citing *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir. 1992)). Specifically, § 1133 provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) Provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) Afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Further, the Department of Labor's regulations elaborate that the denial should be provided in writing or electronically and set forth, in a manner calculated to be understood by the claimant:

(i)     The specific reason or reasons for the adverse
        determination;
(ii)    Reference to the specific plan provisions on which
        the determination is based;
(iii)   A description of any additional material or
        information necessary for the claimant to perfect
        the claim and an explanation of why such material
        or information is necessary; [and]
(iv)    A description of the plan's review procedures and
        the time limits applicable to such procedures . .
        . .

29 C.F.R. § 2560.503-1(g)(1)(i)-(iv). Ultimately, the denial

notice must merely "substantially comply" with the statute and

regulations. *Lacy v. Fullbright & Jaworski*, 405 F.3d 254, 257 (5th

Cir. 2005); *see also Baptist Mem'l Hosp.—DeSoto Inc. v. Crain Auto.

Inc.*, 392 F. App'x 288, 293 (5th Cir. 2010). "This means that

'[t]echnical noncompliance with ERISA procedures 'will be excused'

so long as the purposes of section 1133 have been fulfilled."

*Robinson*, 443 F.3d at 393 (citing *White v. Aetna Life Ins. Co.*,

210 F.3d 412, 414 (D.C. Cir. 2000)). The statute and regulations

were "designed to afford the beneficiary an explanation of the

denial of benefits that is adequate to ensure meaningful review of

that denial." *Schneider v. Sentry Grp. Long Term Disability Plan*,

422 F.3d 621, 627-28 (7th Cir. 2005) (quoting *Halpin*, 962 F.2d at

690); *see also Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d

148, 154 (5th Cir. 2009) (noting that the Fifth Circuit has "looked

favorably upon decisions that require 'knowing what evidence the

decision-maker relied upon, having an opportunity to address the

accuracy and reliability of the evidence, and having the decision-

maker consider the evidence presented by both parties prior to reaching and rendering his decision'" and that "[s]ubstantial compliance requires 'meaningful dialogue' between the beneficiary and administrator"). Nonetheless, "[r]emand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA." *Lafleur*, 563 F.3d at 157 (internal citations omitted).

Here, Plaintiff argues that, because Defendant's denial letters fail to provide specific reasons for the denials or outline the evidence considered by the plan administrator, the denials do not substantially comply with the statute and regulations. Rec. Doc. 28-1 at 19. Thus, Plaintiff maintains that the case should, at the very least, be remanded; alternatively, he suggests that the procedural deficiencies support a finding that the administrator abused its discretion. *Id.*

Defendant responds that its denial letters amounted to a "meaningful dialogue" with Plaintiff because they "provided adequate notice in writing to Plaintiff that he was not eligible for long term disability benefits because he was not totally disabled as defined by the Plan" and the plan "provided a description of Plaintiff's appeal rights and applicable time limits." Rec. Doc. 37 at 8.

32

Defendant's initial denial letter informed Plaintiff that he did not qualify for long-term disability benefits because he did not meet the plan's definition of "totally disabled." *See* Rec. Doc. 24-4 at 1. It also cited the relevant section of the plan, Article II, section 2. *Id.* The second denial letter contained substantially similar information. *See id.* at 127. Thus, contrary to Plaintiff's arguments, the letters <u>did</u> provide the specific reason for the denials and they <u>did</u> substantially comply with the statute and regulations. In other words, Defendant adequately complied with ERISA's procedural requirements.

### 6. THE PLAN'S DEFINITION OF "TOTALLY DISABLED"

The plan provides that "eligible full-time salaried employees . . . who remain totally disabled after completion of the full period of Salary Continuance or Short Term Disability will be eligible for Long Term Disability benefits . . . ." Rec. Doc. 24-4 at 139. A person is "totally disabled" when

> on evidence satisfactory to the Company and the Company's Medical Director or the Director's designate, the employee is unable to perform the duties of the assigned job <u>or any job for which the employee is or may reasonably become qualified</u> based on education, training or experience due to a physical or mental condition caused by illness or injury.

*Id.* at 140 (emphasis added).

Plaintiff maintains that the evidence in the administrative record, including medical records and opinions, demonstrate that

33

he "continues to suffer severe, debilitating pain that prevents him from working" and that his "established limitations . . . are inconsistent with any full-time employment." Rec. Doc. 28-1 at 20. He also argues that the administrator's medical reviewers did not dispute (1) Plaintiff's condition or that his condition causes limitations; (2) the opinions of his treating physicians regarding the amount of time that Plaintiff would be off-task; or (3) the expected absenteeism rate, which would be unacceptable in a competitive workplace. *Id.*

Defendant maintains that its "decision to deny long term disability benefits is supported by substantial evidence in [Plaintiff's] medical records because the list of medical limitations and restrictions do not bar him from performing job duties at a sedentary level." Rec. Doc. 37 at 8.

Even adjusting the abuse of discretion standard to provide slightly less deference, in light of any existing conflict(s), there is still substantial evidence in the record, i.e. more than a scintilla but less than a preponderance, to allow Defendant to reasonably conclude that Plaintiff did not meet the plan's definition of "totally disabled." Plaintiff's treating physicians and Defendant's independent reviewers simply disagree as to the extent of Plaintiff's limitations. Accordingly, we find that Defendant did not abuse its discretion when it denied Plaintiff's claims for long-term disability benefits.

34

## B. MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

"The plan administrator has the obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest whether that record is complete." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 215 F.3d 516, 521 (5th Cir. 2000) (citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999), *abrogated in part by Glenn*, 554 U.S. 105 (citing *Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201 (5th Cir. 1997))). In *Vega*, when the plaintiff sought to introduce evidence to the court that was not before the plan administrator, the Fifth Circuit determined that "[t]he district court . . . correctly held that it could not admit new evidence . . . ." 188 F.3d at 299-300. It further held that "the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Id.* at 300. Thus, the Fifth Circuit seemed to "recognize that, in undefined circumstances, a claimant may supplement the administrative record even <u>after</u> a plan administrator has denied a claim." *Anderson v. Cytec Indus., Inc.*, No. 07-5518, 2009 WL 911296, at *7 (E.D. La. Mar. 27, 2009), *aff'd,* 619 F.3d 505 (5th Cir. 2010).[3] In any event, though, "the Fifth

---

[3] The Court in *Anderson* also noted that "if *Vega* is read to allow claimants to supplement the administrative record after the administrator's claim denial, it appears to be the only circuit to allow it." 2009 WL 911296, at *7 n.9 (citing

Circuit has chosen not to give content to what constitutes a fair opportunity to consider additional evidence." *Id.*

In *Anderson*, the parties disputed whether or not the administrative record included evidence submitted by the plaintiff before filing suit but after the defendant denied the plaintiff's administrative appeal. 2009 WL 911296, at *7. Specifically, the appeal was decided in July of 2006 and the plaintiff sought to supplement the record six months later. *Id.* On appeal, the Fifth Circuit avoided the timing issue by finding that, even if the supplemental materials were part of the administrative record, it would still find that the administrator's decision was not an abuse of discretion. 619 F.3d at 516. Specifically, notes and reports on the plaintiff's mental health "after his final appeal was denied [were] weakly relevant, at best, to his mental health during the time period at issue"; a letter from a psychiatry resident who did not treat the plaintiff during the relevant time period was also conclusory; and a letter from a psychiatrist, who never treated the plaintiff, failed to assert that the plaintiff could not perform his job during the relevant time period. *Id.* at 5176–17.

Here, Plaintiff seeks to introduce fifty-six pages of medical records from TGMC and Houma Orthopedic Clinic. *See* Rec. Doc. 27-3 at 1. Specifically, the records appear to contain July 28, 2014

---

various cases from the Sixth, Ninth, and Tenth Circuits, as well as the Eastern District of Louisiana).

MRI results (*id.* at 81-81); progress notes from August 4, September 29, November 10, and December 22, 2014 doctor's visits (*id.* at 65-70, 75-76); September 30, 2014 and November 14, 2013 prescriptions for physical therapy (*id.* at 16-17, 42, 58-59); TGMC physical therapy notes and evaluations from October 3 through December 1, 2014 (*id.* at 8-13, 18, 20-22, 26-29, 33-39, 43-45, 51-54, 63); a medicine list (*id.* at 19); low back pain questionnaires (*id.* at 23-24, 46-47, 61-62); a lower extremity functional scale questionnaire (*id.* at 25, 60); signed TGMC notices and consent forms (*id.* at 30, 40-41, 48, 55-57, 64); and December 2014 and January 2015 test results and notes from the Southeast Neuroscience Center (*id.* at 71-74, 77-80).

We do not think, and Plaintiff does not appear to argue, that these records contain any significant information (i.e. any "smoking gun") that was not already available to Defendant's independent reviewers, who were aware that Plaintiff had undergone various MRIs, that Plaintiff was prescribed physical therapy, and that Plaintiff's treating physicians believed he was totally disabled. Thus, like the Fifth Circuit in *Anderson*, we find that, even if the additional records were included in the administrative record, we would still find that Defendant's denial was not an abuse of discretion.

### IV.   <u>CONCLUSION</u>

For the reasons outlined above,

**IT IS ORDERED** that Defendant's motion for summary judgment (Rec. Doc. 24) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to supplement the administrative record (Rec. Doc. 27) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Rec. Doc. 28) is **DENIED.**

New Orleans, Louisiana, this 8th day of March, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE